CA No. 23-338

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

   v.

MICHAEL MIRANDO,

        Defendant-Appellant.

DC No. 2:16-cr-00215-PA

---

## APPELLANT'S OPENING BRIEF

---

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL
DISTRICT OF CALIFORNIA

THE HONORABLE PERCY ANDERSON
UNITED STATES DISTRICT JUDGE

CUAUHTEMOC ORTEGA
Federal Public Defender
JOSHUA D. WEISS
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
(213) 894-2854
Josh_Weiss@fd.org
*Counsel for Defendant-Appellant*

### TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................ 1

II. ISSUE PRESENTED .......................................................... 4

III. STATEMENT OF JURISDICTION AND CUSTODY STATUS ......................... 4

IV. STATEMENT OF THE CASE .................................................. 5

    A. The charge and conviction ..................................... 5

    B. At the original sentencing, the District Court did *not* impose an electronic monitoring or search condition ............ 6

    C. After this Court vacated the original sentence, the District Court imposed a new sentence that, again, did *not* impose an electronic monitoring or search condition ....... 7

    D. Prior to his release from custody, Mr. Mirando agreed to additional conditions of supervised release, including electronic monitoring, so that he could live in Oregon, where his entire family, including his young son, were located .................................................... 10

    E. Mr. Mirando secured early release from custody by completing multiple rehabilitative programs, and he has since maintained a perfect record on supervision ............... 12

    F. Without any explanation, the District Court denied a stipulation by the parties, supported by the Probation Office, to remove the electronic monitoring condition ......... 13

    G. Mr. Mirando filed an unopposed motion, supported by the Probation Office, asking the District Court to issue an indicative ruling stating that it would transfer jurisdiction over Mr. Mirando's supervision to Oregon, which would obviate this appeal .......................................... 15

# TABLE OF CONTENTS

Page

V.    SUMMARY OF ARGUMENT ................................................... 18

VI.   STANDARDS OF REVIEW .................................................. 19

VII.  ARGUMENT .................................................................. 20

    A.    This Court reviews the denial of a request to modify the terms of supervision to determine whether it involved a "greater deprivation of liberty than reasonably necessary". 20

    B.    The District Court abused its discretion by denying a stipulation to modify the terms of supervision without any explanation .................................................... 23

    C.    This Court should reverse or, at the least, vacate and remand for reconsideration before a different district court judge ............................................................ 33

VIII. CONCLUSION ................................................................ 39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Evon v. Law Offices of Sidney Mickell,*
688 F.3d 1015 (9th Cir. 2012) ............................................................ 37

*Riley v. California,*
573 U.S. 373 (2014) ..................................................................... 29, 30

*States v. Barsumyan,*
517 F.3d 1154 (9th Cir. 2008) ...................................................... 30, 31

*United States v. Bainbridge,*
746 F.3d 943 (9th Cir. 2014) ..................................................... *passim*

*United States v. Bare,*
806 F.3d 1011 (9th Cir. 2015) .............................................................. 30

*United States v. Collins,*
684 F.3d 873 (9th Cir. 2012) ............................................................... 34

*United States v. Forrest,*
764 F. App'x 601 (9th Cir. 2019) (unpublished) ................................ 31

*United States v. Gross,*
307 F.3d 1043 (9th Cir. 2002) ................................................... *passim*

*United States v. Hinkson,*
585 F.3d 1247 (9th Cir. 2009) (en banc) .................................... *passim*

*United States v. Jones,*
556 F. App'x 659 (9th Cir. 2014) (unpublished) ................................ 11

*United States v. LaCoste,*
821 F.3d 1187 (9th Cir. 2016) .............................................................. 29

*United States v. Lee,*
687 F. App'x 584 (9th Cir. 2017) (unpublished) ................................ 31

TABLE OF AUTHORITIES

**Page(s)**

*United States v. Leonard,*
  857 F. App'x 917 (9th Cir. 2021)(unpublished) .................................. 31

*United States v. Lupold,*
  806 F. App'x 522 (9th Cir. 2020) .................................................. 32, 33

*United States v. Miller,*
  205 F.3d 1098 (9th Cir. 2000)........................................................ 20

*United States v. Mirando,*
  768 F. App'x 596 (9th Cir. 2019) (unpublished) ................................ 7

*United States v. Mirando,*
  No. 19-50384, 2021 WL 4947330 (9th Cir. Oct. 25, 2021)
  (unpublished) ....................................................................... 9

*United States v. Ohler,*
  22 F.3d 857 (9th Cir. 1994)................................................... 11

*United States v. Park,*
  No. 18-50230, 2021 WL 5984980 (9th Cir. Dec. 16, 2021)
  (unpublished) ...................................................................... 31, 32

*United States v. Quinzon,*
  643 F.3d 1266 (9th Cir. 2011)............................................... 20

*United States v. Reyes,*
  313 F.3d 1152 (9th Cir. 2002)............................................... 34

*United States v. Rush,*
  649 F. App'x 472 (9th Cir. 2016) (unpublished) .......................... 19, 23

*United States v. Sales,*
  476 F.3d 732 (9th Cir. 2007)................................................ 29, 30, 33

*United States v. Watkins,*
  No. 2:23-CR-00024-DAD, 2023 WL 4707952 (E.D. Cal.
  July 24, 2023) .................................................................... 18

TABLE OF AUTHORITIES

**Page(s)**

*United States v. Weber*,
  451 F.3d 552 (9th Cir. 2006).............................................29

*United States v. Wells*,
  879 F.3d 900 (9th Cir. 2018)................................37, 38, 39

*United States v. Williams*,
  356 F.3d 1045 (9th Cir. 2004).....................................34

**Statutes**

18 U.S.C. § 1030.................................................................11

18 U.S.C. § 1347...................................................................5

18 U.S.C. § 3231...................................................................4

18 U.S.C. § 3553....................................................20, 21, 22, 23

18 U.S.C. § 3583...........................................................*passim*

18 U.S.C. § 3605..........................................................10, 17, 18

18 U.S.C. § 3621.................................................................12

18 U.S.C. § 3742...................................................................4

28 U.S.C. § 1291...................................................................4

28 U.S.C. § 2255............................................................17, 18

**Rules and Regulations**

28 C.F.R. § 523.41.............................................................12

28 C.F.R. § 523.42.............................................................12

Fed. R. App. P. 12.1...........................................................17

Fed. R. Crim. P. 32.1.........................................................21

TABLE OF AUTHORITIES

**Page(s)**

Fed. R. Crim. P. 37 ................................................................ 17

**Other Authorities**

*Substance Abuse Treatment,*
  Federal Bureau of Prisons,
  https://www.bop.gov/inmates/custody_and_care/substance
  _abuse_treatment.jsp (last visited Oct. 13, 2023) .............................. 12

# I. Introduction

Michael Mirando has lived in Oregon for most of his adult life. His parents, his seven-year-old son, and his entire community are located in Oregon. Thus, prior to his release from Bureau of Prisons (BOP) custody, Mr. Mirando requested that he be permitted to live in Oregon. However, because the healthcare fraud case against him was prosecuted in Southern California, he could live in Oregon upon release only if the U.S. Probation Office for the District of Oregon accepted the transfer of his supervision.

When Mr. Mirando requested to live in Oregon, the Probation Office there informed him that it would accept transfer over his supervision only if he agreed to a modification to his terms of supervised release that would add 10 additional conditions. Those additional conditions included a general search condition, an electronic search condition, and an electronic monitoring condition, which would permit the Probation Office to install monitoring software on any computer Mr. Mirando used. The District Court, in the Central District of California, had not imposed any of these conditions at Mr. Mirando's

sentencing.  But Mr. Mirando agreed to the additional conditions so that he could to live in Oregon, near his young son, upon release.

Mr. Mirando secured early release from prison by completing two intensive rehabilitation programs and maintaining a perfect record in custody.  After he was released, living in Oregon, the Probation Office there decided that the especially invasive electronic monitoring condition was not necessary.  The Probation Office explained that it supported removing the electronic monitoring condition based on Mr. Mirando's good conduct—both in custody and upon release—and the fact that there was also an electronic search condition in place, rendering the invasive monitoring condition unnecessary.

The parties—Mr. Mirando and the United States—then filed a stipulation asking the District Court to remove the electronic monitoring condition (while leaving all other conditions in place).  The stipulation explained that Mr. Mirando had exhibited nothing but good conduct since his original sentencing, secured early release based on that good conduct, and had not once violated the terms of supervision since his release.  The stipulation also explained that the conditions now in place were more stringent than the ones the Court originally

imposed, since they included the 10 additional conditions that the Court had not imposed until the Oregon Probation Office asked for them. Removing the electronic monitoring condition would still leave a more restrictive set of conditions in place than the Court had originally imposed.

The District Court did not act on the stipulation for four months. When it finally ruled on it, it did so by stamping a single word on the papers filed by the parties: "DENIED." This appeal followed that decision.

The District Court abused its discretion by denying, without offering any explanation, a stipulation joined by the United States and supported by the Probation Office to strike the electronic monitoring condition. To avoid further delays and unnecessary litigation, this Court should reverse, or, at the least, remand for reconsideration before a different district court judge.

## II. Issue Presented

Whether the District Court abused its discretion in denying, without offering any explanation, a stipulation supported by the Probation Office to modify Mr. Mirando's terms of supervised release.

## III. Statement of Jurisdiction and Custody Status

This appeal is from the final order issued by the Honorable Percy Anderson, United States District Court Judge, on March 2, 2023, denying a stipulation to modify Michael Mirando's conditions of supervised release. (ER-4.) Mr. Mirando filed a timely notice of appeal on March 7, 2023. (ER-239.) The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(e). This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. *See United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002). Mr. Mirando was released from BOP custody and began serving his three-year term of supervised release on June 22, 2022. (ER-6, 15.)

## IV. STATEMENT OF THE CASE

### A. The charge and conviction

In April 2016, Michael Mirando was charged with 15 counts of healthcare fraud, in violation of 18 U.S.C. § 1347. (ER-229-36.) The indictment alleged that Mr. Mirando was a "member and owner" of Holter Labs, "which provided cardiac monitoring services to physicians" with a device called a Holter Recorder." (ER-229.) Doctors would call Holter Labs if they were interested in using Holter Recorders to treat patients, and then Mr. Mirando would send them the devices. (ER-233.) Once a doctor used the device on a patient, Mr. Mirando's business partner would produce a report of the data gathered by the Holter Recorder, which the doctors would use for diagnostic purposes. (ER-233.) Mr. Mirando would then submit bills to insurance companies for the Holter Recorder tests. (ER-233.)

The indictment alleged that in managing Holter Labs, Mr. Mirando overbilled insurance companies by submitting claims that the Holter Recorders "could not and did not perform." (ER-233-34.) In total, the indictment listed 15 fraudulent bills (corresponding to the 15 charged counts) that Mr. Mirando allegedly submitted to three

5

insurance companies. (ER-235-36.) Mr. Mirando proceeded to trial in April 2017, and a jury returned guilty verdicts on all of the charged counts. (ER-224-28.)

## B. At the original sentencing, the District Court did *not* impose an electronic monitoring or search condition

Before Mr. Mirando's original sentencing, the U.S. Probation Office calculated a sentencing Guidelines range of 97 to 121 months' imprisonment. (PSR at 3.) This calculation was based on a base offense level of 6, with 18 points added for an intended loss figure of approximately $8.4 million. (PSR ¶ 46.) Mr. Mirando's criminal History Category was 1, as he had no prior criminal record. (PSR ¶¶ 60-61.) In October 2017, the District Court sentenced Mr. Mirando to 97 months' imprisonment, to be followed by three years of supervised release, as well as restitution in the amount of $3,025,329.47. (ER-162.)

Notably, the terms of supervised release imposed by the Court did *not* include any electronic search or electronic monitoring conditions. (ER-162-66.) The Court did not even impose the more common condition authorizing a search of non-electronic property. That is, it did

not impose a condition authorizing the warrantless search of any of Mr. Mirando's property—electronic or otherwise. (ER-162-66.)

Mr. Mirando appealed, and a panel of this Court vacated and remanded for resentencing, concluding that the District Court erred in calculating the loss amount and consequently the Guidelines range. *See United States v. Mirando*, 768 F. App'x 596, 597-98 (9th Cir. 2019) (unpublished); (ER-146 (copy of order)).

## C. After this Court vacated the original sentence, the District Court imposed a new sentence that, again, did *not* impose an electronic monitoring or search condition

In September 2019, after this Court remanded for resentencing, the parties submitted a joint "sentencing agreement," in which they jointly recommended that Mr. Mirando receive a sentence of 60 months' imprisonment. (ER-77-84.) Each party filed a sentencing memorandum explaining its reasons for supporting the sentencing agreement. (ER-93-145.) The Defense argued that the proposed 60-month sentence was proper in light of Mr. Mirando's post-sentencing rehabilitation. (ER-98-110.) Indeed, in the two years since the Court had first sentenced Mr. Mirando, he had used his time for rehabilitation, taking many educational and self-help courses, becoming baptized and

7

engaging seriously with religion, and working hard in the food service program at his prison and thereby earning the respect of fellow inmates. (ER-102-103.) Mr. Mirando submitted more than a dozen letters from friends and family members who noted his changed attitude and demeanor in his two-years of custody and that he demonstrated that he had accepted responsibility for his actions. (ER-103-108, 121-38.)

The Defense also pointed out that since the original sentencing, Mr. Mirando had been diagnosed with severe alcohol and drug use disorders that he had been suffering from since the age of 18. (ER-109.) He was now acknowledging and receiving treatment for these substance abuse issues for the first time in his life; indeed, he had completed two prison drug treatment programs by the time of the resentencing. (ER-109.)

The Court then rejected the parties' joint sentencing agreement and imposed a sentence of 87 months' imprisonment, to be followed by three years of supervised release. (ER-65-66.) The Court also ordered restitution in the amount of $3,025,329.47. (ER-65.) In imposing the sentence, the Court recognized Mr. Mirando's "post-conviction

rehabilitation," as well as his admission to substance abuse issues and his family circumstances, stating that "but for those factors, I probably would have imposed a more substantial period of incarceration." (ER-65; *see also* ER-27 (Ninth Circuit order stating that District Court recognized Mr. Mirando's rehabilitation).)

As to supervised release, the District Court imposed the 15 standard conditions contained in the Central District of California's General Order 18-10, as well as eight additional conditions. (ER-29-33.) Once again, the Court did *not* impose any electronic monitoring, electronic search, or even any search condition at all. (ER-29-33.) This Court affirmed this revised sentencing decision, noting that "this case was not especially complex or unusual." *United States v. Mirando*, No. 19-50384, 2021 WL 4947330, at *2 (9th Cir. Oct. 25, 2021) (unpublished); (ER-23-28 (copy of order)).

**D.    Prior to his release from custody, Mr. Mirando agreed to additional conditions of supervised release, including electronic monitoring, so that he could live in Oregon, where his entire family, including his young son, were located**

Because this case was prosecuted in the Central District of California—where the lead FBI agent and some of the victim insurers were based—the default procedure upon Mr. Mirando's release from custody would subject him to supervision in the Central District of California.  *See* 18 U.S.C. § 3605.  But Mr. Mirando had very few ties to California.  He had lived in Oregon for most of his adult life.  (ER-5-6; PSR at 2 & 12-13.)  Additionally, his parents, his seven-year-old son, and his entire community were located in Oregon.  (ER-6; PSR at 12-13.)  Consequently, while in custody, Mr. Mirando requested that he be permitted to reside in the District of Oregon upon release. (ER-5-6.)

In response to Mr. Mirando's request, the U.S. Probation Office in the District of Oregon informed Mr. Mirando that "their office is willing to accept transfer of supervision contingent upon a modification of the conditions of supervision to include" 10 additional conditions.  (ER-20; *see also* ER-6.)  Those supplemental conditions included: (1) a general

search condition (Supplemental Condition 1); (2) an electronic search condition, stating that Mr. Mirando must submit his computers or "other electronic communications or data storage devices or media, to a search" (Supplemental Condition 3); and (3) an electronic monitoring condition (Supplemental Condition 4), which states, "[y]ou must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1)) you use." (ER-20-22.)

Because caselaw in this circuit gave the District of Oregon wide discretion over whether to accept a transfer of supervision, Mr. Mirando understood that he had to agree to the supplemental conditions if he wanted to live in Oregon upon release from custody. (ER-6); *see also United States v. Ohler*, 22 F.3d 857, 858–59 (9th Cir. 1994); *United States v. Jones*, 556 F. App'x 659, 660 (9th Cir. 2014) (unpublished). Mr. Mirando ultimately consented to the supplemental conditions so that he could live in Oregon—near his son—while on release. (ER-6, 20.) The Probation Office in the District of Oregon then petitioned the District Court to modify the terms of Mr. Mirando's supervision to include the supplemental conditions. (ER-20.) The District Court then ordered the requested modification. (ER-20.)

**E.   Mr. Mirando secured early release from custody by completing multiple rehabilitative programs, and he has since maintained a perfect record on supervision**

Mr. Mirando secured early release from custody by maintaining a perfect record in custody and successfully completing two extensive rehabilitative programs.  First, he obtained a reduction to his sentence by successfully completing the BOP's Residential Drug Abuse Program (RDAP).  (ER-6, 15); *see also* 18 U.S.C. § 3621(e).  The BOP describes RDAP as a nine-month, intensive drug-treatment program whose participants, research shows, "are significantly less likely to recidivate and less likely to relapse to drug use than non-participants."  *Substance Abuse Treatment*, Federal Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/substance_abuse_treat ment.jsp (last visited Oct. 13, 2023).  Second, Mr. Mirando obtained a further reduction to his term of custody pursuant to the Earned Time Credit Program of the First Step Act of 2018 (FSA), under which certain low-risk inmates can earn sentence reductions by completing "Evidence-Based Recidivism Reduction Programs."  (ER-6, 15); 28 C.F.R. §§ 523.41 & 523.42.

Having been in BOP custody since October 2017, Mr. Mirando was released based on the early release provisions of RDAP and the FSA's Earned Time Credit Program and began serving his term of supervised release on June 22, 2022. (ER-6, 15.) He has since resided in Oregon, under the supervision of the Oregon Probation Office. (ER-6, 15.) He has been paying restitution and has not once violated his terms of supervised release. (ER-6, 15 (declaration of Probation Officer).)

**F.    Without any explanation, the District Court denied a stipulation by the parties, supported by the Probation Office, to remove the electronic monitoring condition**

On October 26, 2022, approximately four months after Mr. Mirando was released from custody, defense counsel spoke to United States Probation Officer Omar Lara, who was supervising Mr. Mirando in Oregon. (ER-6.) Officer Lara informed defense counsel that in light of Mr. Mirando's good conduct and the fact that there was an electronic search condition in place (Supplemental Condition 3), the U.S. Probation Office supported removing the electronic monitoring condition (Supplemental Condition 4). (ER-6-7.) As addressed above, the District Court did not impose that electronic monitoring condition at

Mirando's sentencing but added it to Mr. Mirando's terms of release upon a petition by the Oregon Probation Office. (ER-6, 20.)

In light of the Probation Office's support for a modification, the parties filed a stipulation on November 2, 2022. (ER-5-7.) The stipulation described Mr. Mirando's good conduct since his original sentencing, including his successful completion of multiple, intensive rehabilitative programs in custody and his perfect record on supervision. (ER-6.) The stipulation further noted that, because of Mr. Mirando's good conduct, the Probation Office supported removing the electronic monitoring condition. (ER-6-7.) Consequently, the parties—the Government and Mr. Mirando—"request[ed] that Mr. Mirando's conditions of supervised release be modified to strike the electronic monitoring condition (Supplemental Condition 4)." (ER-7-8.) The stipulation made clear that if the Court granted the stipulation, "all other conditions of supervised release [would] remain as previously ordered." (ER-7.)

Th District Court did not rule on the stipulation for four months—until March 2, 2023. (ER-4.) When the Court finally issued its ruling, it did so by stamping a single word on the papers filed by the parties:

14

"DENIED." (ER-4.) The Court did not offer any reason for denying the stipulation. (ER-4.) This appeal followed. (ER-239.)

## G. Mr. Mirando filed an unopposed motion, supported by the Probation Office, asking the District Court to issue an indicative ruling stating that it would transfer jurisdiction over Mr. Mirando's supervision to Oregon, which would obviate this appeal

While this appeal was pending, Mr. Mirando filed an unopposed motion for an indicative ruling, asking the District Court to enter an order indicating that it would grant a motion to transfer the jurisdiction over Mr. Mirando's supervised release to the District of Oregon, if this Court remanded the case for that purpose. (ER-9-13.) The Probation Office "support[ed] the request to transfer jurisdiction," and the Government did not oppose. (ER-9.) Mr. Mirando represented that he would dismiss with prejudice this pending appeal if jurisdiction over his supervision were transferred to the District of Oregon. (ER-13.)

The motion was accompanied by a sworn declaration from Mr. Mirando's assigned Probation Officer in Oregon, Officer Omar Lara. (ER-14.) Officer Lara explained that because Mr. Mirando's supervision was transferred to the District of Oregon, but jurisdiction remained in the United States District Court for the Central District of California,

15

Mr. Mirando was being dually supervised by the Probation Offices in Oregon and in the Central District of California. (ER-10, 15.) Accordingly, two Probation Officers were assigned to the case: Officer Lara in the District of Oregon supervised Mr. Mirando, but Supervisory United States Probation Officer Ava Austin in the Central District of California was also assigned to his case. (ER-15.)

Officer Lara attested that this dual supervision requires the expenditure of duplicative resources by the Probation Office. (ER-15.) For example, whenever any questions arise about Mr. Mirando's supervision, including in relation to conditions of release, Supervisory United States Probation Officer Austin must acquaint herself with the specifics of the case to inform any position taken by the United States Probation Office before the Court in the Central District of California, in consultation with the United States Probation Office for the District of Oregon. (ER-15.) This leads to the duplicative expenditure of resources by the United States Probation Office in the Districts of Oregon and the Central District of California. (ER-15.)

Based on these circumstances, the Probation Office supported "permanently transferring jurisdiction over Mr. Mirando's supervision

to the United States District Court for the District of Oregon."
(ER-11, 17.)

Because this appeal is currently pending, the motion asked the District Court to "issue a ruling stating that it would 'grant the motion if the court of appeals remands for that purpose,'" pursuant to Federal Rule of Criminal Procedure 37(a)(3). (ER-12 (quoting Fed. R. Crim. P. 37(a)(3)).) The motion explained that if the District Court entered such a ruling, "the Ninth Circuit may then remand for further proceedings on the issue, while maintaining jurisdiction until this Court decides the motion on remand." (ER-12 (citing Fed. R. App. P. 12.1).) Mr. Mirando represented that to promote the efficient transfer of jurisdiction, he would dismiss this appeal with prejudice if jurisdiction over his supervision was transferred to the District of Oregon.[1]
(*See* ER-12.)

---

[1] The motion also explained that the District Court has authority to transfer the jurisdiction of the supervised releasee to the United States District Court for the District of Oregon, upon that Court's order of acceptance of jurisdiction, pursuant to 18 U.S.C. § 3605. Under § 3605, such a transfer of jurisdiction would be limited to the court's "powers" over Mr. Mirando's term of supervised release, and would not affect the California district court's jurisdiction over Mr. Mirando's pending petition for habeas corpus under 28 U.S.C. § 2255 (which was

Mr. Mirando filed the unopposed motion for an indicative ruling on August 15, 2023. (ER-13, 261.) As of the filing of this brief on October 16, 2023, the District Court has not acted on that motion. (*See* ER-261.)

## V. SUMMARY OF ARGUMENT

The District Court abused its discretion by denying the stipulation to remove the electronic monitoring condition (Supplemental Condition 4) from Mr. Mirando's terms of supervision. Given that the Court did not originally impose this condition as part of Mr. Mirando's sentence, its refusal to remove the condition after Mr. Mirando had demonstrated nothing but exemplary conduct in custody and during supervision was entirely "illogical" and "without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). Moreover, all of the facts contained in the record—including that the Probation Office

---

pending on the docket of a related civil case, C.D. Cal. No. 2:23-cv-4498, at the time the motion for an indicative ruling was filed). *See United States v. Watkins*, No. 2:23-CR-00024-DAD, 2023 WL 4707952, at *1 (E.D. Cal. July 24, 2023) (venue for petition for habeas corpus under § 2255 remains in original sentencing court, even after jurisdiction over supervision is transferred under § 3605).

stated that the condition was unnecessary—demonstrated that the electronic monitoring condition imposed a "greater deprivation of liberty than is reasonably necessary." *United States v. Bainbridge*, 746 F.3d 943, 951 (9th Cir. 2014) (quoting 18 U.S.C. § 3583(d)). The District Court's refusal to remove the condition was an abuse of discretion.

This Court should reverse and strike the computer monitoring condition. Alternatively, if the Court does not reverse outright, it should at least remand for reconsideration before a different district court judge.

## VI. STANDARDS OF REVIEW

This Court reviews a district court's decision declining to modify the terms of supervised release for an abuse of discretion. *See United States v. Bainbridge*, 746 F.3d 943, 946 (9th Cir. 2014); *United States v. Rush*, 649 F. App'x 472, 473 (9th Cir. 2016) (unpublished). A court abuses its discretion if its decision is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (quotation marks and citation omitted).

# VII. ARGUMENT

## A. This Court reviews the denial of a request to modify the terms of supervision to determine whether it involved a "greater deprivation of liberty than reasonably necessary"

"[A] sentencing court must be able to respond to changes in the defendant's circumstances that may render a previously imposed condition of release either too harsh or inappropriately tailored to serve the general punishment goals of [18 U.S.C.] § 3553(a)." *United States v. Gross*, 307 F.3d 1043, 1044 (9th Cir. 2002); *see also United States v. Quinzon*, 643 F.3d 1266, 1274 (9th Cir. 2011) ("conditions should be subject to modification, for the sentencing court must be able to respond to changes in the probationer's circumstances as well as new ideas and methods of rehabilitation" (quoting Fed. R. Crim. P. 32.1(c) & advisory committee's note to 1979 Addition)).

To that end, "[18 U.S.C.] § 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and conditions of supervised release in order to account for new or unforeseen circumstances." *United States v. Miller*, 205 F.3d 1098, 1101 (9th Cir. 2000) (alteration and citation omitted). Specifically, § 3583(e) states that a district court "may, after considering the factors set forth in [18

U.S.C. § 3553(a)] . . . modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2).

While "a change in circumstances may serve as a *sufficient* basis upon which a district court may modify the conditions of supervised release," a change in circumstances is not "*necessary* for a district court to modify such conditions." *United States v. Bainbridge*, 746 F.3d 943, 948 (9th Cir. 2014) (emphases in original). Instead, § 3583(e) places only two limitations on a district court's authority to modify the conditions of release. *Bainbridge*, 746 F.3d at 950-51.[2] Those are:

First, in deciding whether to modify the conditions of supervision, a district court must consider the applicable § 3553(a) factors. 18 U.S.C. § 3583(e)(2). The applicable § 3553(a) factors require the court to consider: "the nature and circumstances of the offense and the history and characteristics of the defendant"; the need to "afford

---

[2] One additional requirement is contained in Federal Rule of Criminal Procedure 32.1, which provides a defendant with a right to a hearing, with representation by counsel, before a district court modifies the terms of supervision. Fed. R. Crim. P. 32.1(c)(1). Mr. Mirando waived his right to a hearing in the stipulation seeking a modification. (ER-7); Fed. R. Crim. P. 32.1(c)(2) (a defendant may waive the hearing).

21

adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant"; the defendant's needed "educational or vocational training" and medical needs; the applicable sentencing range and any pertinent policy statement; "the need to avoid unwarranted sentence disparities"; and the need to pay restitution. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7); 18 U.S.C. § 3583(e)(2) (specifying these provisions of § 3553(a) must be considered); *Bainbridge*, 746 F.3d at 950-51.

Second, a district court's modification decision must comply with the "provisions applicable to the initial setting of the terms and conditions of post-release supervision," as specified in § 3583(d). 18 U.S.C. § 3583(e)(2); *Bainbridge*, 746 F.3d at 951. Under this requirement, particular conditions of supervision are permitted only if, among other things, they "'involve no greater deprivation of liberty than is reasonably necessary to achieve' the goals of deterrence, protection of the public, and defendant rehabilitation." *Bainbridge*, 746 F.3d at 951 (quoting 18 U.S.C. § 3583(d)) (alteration omitted).

Thus, in reviewing a district court's denial of a request to modify the conditions of supervised release, this Court assesses whether it

22

abused its discretion in considering the § 3553(a) factors and whether its denial involved a "greater deprivation of liberty than reasonably necessary to protect the public and promote [the defendant's] rehabilitation." *Rush*, 649 F. App'x at 473; *see also Gross*, 307 F.3d at 1044; *Bainbridge*, 746 F.3d at 951-53.

## B. The District Court abused its discretion by denying a stipulation to modify the terms of supervision without any explanation

The District Court abused its discretion by denying the stipulation to remove the electronic monitoring condition (Supplemental Condition 4) from Mr. Mirando's terms of supervision. Given that the Court did not originally impose this condition as part of Mr. Mirando's sentence, its refusal to remove the condition after Mr. Mirando had demonstrated nothing but exemplary conduct in custody and during supervision was entirely "illogical" and "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1262. Moreover, all of the facts contained in the record—including that the Probation Office stated that the condition was unnecessary for effective supervision—demonstrated that the electronic monitoring condition imposed a "greater deprivation of liberty than is reasonably

23

necessary." *Bainbridge*, 746 F.3d at 951 (quoting 18 U.S.C. § 3583(d)). The District Court's refusal to remove the condition was an abuse of discretion.

1.     The stipulation presented the District Court with a man who had shown significant positive change since the original sentencing proceedings.  Such positive change is a well recognized basis to *loosen* the strictures of supervision from those that were originally imposed at sentencing.  *See Gross*, 307 F.3d at 1044.  Here, though, the Court did the opposite:  While the Court found that electronic monitoring was *not* necessary at the original sentencing, it now insisted on keeping that condition in place.  But if electronic monitoring was not necessary to achieve the goals of sentencing at the original sentencing proceedings— before Mr. Mirando had demonstrated years of exemplary behavior— then it was entirely illogical for the District Court to insist that this condition was necessary after Mr. Mirando had demonstrated nothing but good behavior in the years since.  The Court's decision was thus an abuse of discretion.  *Hinkson*, 585 F.3d at 1262 (illogical decision is an abuse of discretion).

24

The District Court did not originally impose an electronic monitoring condition—not at Mr. Mirando's original sentencing, nor at his resentencing following remand from this Court. (ER-29-33, 162-66.) The District Court did not even impose a general search condition or an electronic search condition at Mr. Mirando's two rounds of sentencings. (ER-29-33, 162-66.) The Court only imposed those conditions—a general search condition, an electronic search condition, and electronic monitoring—upon the petition of the Oregon Probation Office. (ER-20; *see also* ER-6.)

But after Mr. Mirando was released from custody and maintained a perfect record during supervision, the Oregon Probation Office realized that the electronic monitoring condition was excessive. As Mr. Mirando's assigned Probation Officer in Oregon explained, in light of Mr. Mirando's good conduct and the fact that there was already an electronic search condition in place (Supplemental Condition 3), the Probation Office supported removing the electronic monitoring condition. (ER-6-7.) That is, the Probation Office made clear that the electronic monitoring condition was not necessary to effectuate the goals of supervision and thus imposed a "'greater deprivation of liberty

25

than is reasonably *necessary* to achieve' the goals of deterrence, protection of the public, and defendant rehabilitation." *Bainbridge*, 746 F.3d at 951 (quoting 18 U.S.C. § 3583(d)) (emphasis added).

Indeed, by the time the parties jointly asked the Court to remove the electronic monitoring condition, Mr. Mirando had demonstrated nothing but good conduct for years. He secured early release from custody by completing two extensive rehabilitation programs—RDAP and the FSA's Earned Time Credit Program—without getting into any trouble that would have erased his good time credits. (*Supra* Section IV.E.) Upon release, he has consistently made restitution payments and has not once violated his terms of supervision. (ER-6, 15 (declaration of Probation Officer, dated July 6, 2023).)

Refusing to remove a restrictive condition that it did not originally impose from a supervisee who had shown nothing but positive change since the original sentencing was illogical and thus an abuse of discretion.

26

2.    The Court's decision was a further abuse of discretion because it was "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1262.  The record contains no reason supporting the imposition of electronic monitoring. The condition was imposed because the Oregon Probation Office demanded it as a condition of permitting Mr. Mirando to live in Oregon, where his entire family, including his young son, were located. (ER-6, 20.)  But the Oregon Probation Office's petition contained no justification for the condition; it did not explain why the condition was necessary to achieve the goals of supervision.  (ER-20.)  Instead, it simply stated that it would require electronic monitoring as a condition of accepting supervision over Mr. Mirando.  (ER-20.)

Then, after the parties submitted a stipulation offering multiple reasons to remove the condition, with supporting reasons provided by the Oregon Probation Office, the District Court denied that stipulation without offering any justification.  (ER-4.).  Indeed, the District Court ruled on the stipulation with only one word: "DENIED."  (ER-4.)  The record thus does not contain a single justification for the electronic monitoring condition.

27

On the other hand, the record contains ample reasons the condition is *unnecessary*. For starers, as addressed above, the District Court did not originally impose the condition, and the Oregon Probation Office stated that the condition is not necessary in light of Mr. Mirando's demonstrations of rehabilitation. The Oregon Probation Office further explained that the electronic monitoring condition is duplicative with the electronic search condition that is also in place (Supplemental Condition 3). The monitoring condition thus created a "greater deprivation of liberty than is reasonably necessary" to serve the goals of supervision. *Bainbridge*, 746 F.3d at 951 (quoting 18 U.S.C. § 3583(d)).

3. The lack of any justification for Supplemental Condition 4 is particularly troubling since the condition grants the Probation Office wholesale access to monitor "any computer" Mr. Mirando uses. (ER-20-22.) This Court has repeatedly held that such broad electronic monitoring conditions create especially strong intrusions into a supervisee's liberty interests, and they thus require stronger justifications than most conditions of supervision. The lack of any

justification for the monitoring condition here is thus especially problematic.

Where a supervised release condition "implicates a particularly significant liberty interest," a district court must justify its imposition with record evidence showing that the condition is necessary to accomplish one or more of the goals of supervised release, enumerated in § 3583(d)(1), and explain why it involves no greater deprivation of liberty than is reasonably necessary. *United States v. Weber*, 451 F.3d 552, 561 (9th Cir. 2006). A computer monitoring condition is just the type of condition that "implicates a particularly significant liberty interest." Indeed, this Court has repeatedly emphasized that "to comply with the Fourth Amendment, [a computer monitoring condition] must be narrowly tailored." *United States v. Sales*, 476 F.3d 732, 737 (9th Cir. 2007); *see also United States v. LaCoste*, 821 F.3d 1187, 1192 (9th Cir. 2016). This requirement makes perfect sense in the digital age: As the Supreme Court has recognized, "[t]he sum of an individual's private life can be reconstructed through a thousand photographs labeled with dates, locations, and descriptions." *Riley v. California*, 573 U.S. 373, 394 (2014). Consequently, searching a smartphone "would typically

29

expose to the government far *more* than the most exhaustive search of a house." *Id.* at 396.

For these reasons, this Court has repeatedly vacated computer monitoring or electronic search conditions where the record did not establish a sufficient nexus between the defendant's use of electronic devices and the statutory goals of "deterrence, protection of the public, or rehabilitation of the defendant." *United States v. Bare*, 806 F.3d 1011, 1013 (9th Cir. 2015). For example, in *Sales*, even though the defendant had used a computer, a scanner, and a printer to create counterfeit money, this Court vacated computer and internet restrictions because he had "no prior history of illegal conduct involving computer equipment" and investigation "did not reveal any other computer-related or internet-related wrongdoing." 476 F.3d at 734 & 736-37. The Court contrasted those facts from decisions upholding computer monitoring or search conditions "in some cases involving child pornography-related offenses," due to the "strong link between child pornography and the Internet." *Id.* at 737 n.2 (citation omitted).

Similarly, in United *States v. Barsumyan*, 517 F.3d 1154 (9th Cir. 2008), this Court vacated a computer restriction where there was "no

indication that [the defendant] used a computer in any of [his] crimes." *Id.* at 1161. Panels of this Court have regularly followed suit, vacating electronic search or monitoring conditions where the courts imposed them "without establishing a nexus between [the defendants'] use of electronic devices and the statutory goals of supervised release." *United States v. Park*, No. 18-50230, 2021 WL 5984980, at *1 (9th Cir. Dec. 16, 2021) (unpublished); *see also United States v. Leonard*, 857 F. App'x 917, 918 (9th Cir. 2021)(unpublished); *United States v. Forrest*, 764 F. App'x 601, 602 (9th Cir. 2019) (unpublished); *United States v. Lee*, 687 F. App'x 584, 586 (9th Cir. 2017) (unpublished).

Here, the "nature and circumstances" of the offense do not justify the computer monitoring condition. 18 U.S.C. § 3583(e)(2) (citing § 3553(a)(1). Mr. Mirando was convicted of overbilling insurance companies. The offense involved the basic use of email to operate the business and submit bills (as is the case with any business these days). (*See* PSR ¶¶ 24, 27.) But the offense did not involve electronically stored contraband, or any criminal use of internet searches, or any sophisticated use of computers or other electronic devices. And, significantly, the offense did not involve Mr. Mirando's personal

31

electronic devices or computers—the offense conduct involved Mr.
Mirando's business. Supplemental Condition 4 nevertheless applies to
"any computer" Mr. Mirando uses. *See United States v. Lupold*, 806 F.
App'x 522, 526 (9th Cir. 2020) ("[T]he computer monitoring condition is
overbroad in that it requires Lupold to allow installation of monitoring
software on any computer he uses, even if he does not own it and has no
authority to permit or deny such installation.")

Mr. Mirando's personal "history and characteristics" render the
condition even less justified. 18 U.S.C. § 3583(e)(2) (citing § 3553(a)(1)).
He has no prior criminal history—the conviction in this case is the sole
blemish on his record. And he has maintained a perfect record since his
sentencing, both in custody and upon release. These facts fall far short
of "establishing a nexus between [the defendants'] use of electronic
devices and the statutory goals of supervised release." *Park*, 2021 WL
5984980, at *2.

*****

The District Court abused its discretion by denying a stipulation—
supported by the Probation Office—to remove the electronic monitoring
condition from the terms of Mr. Mirando's supervision. The District

32

Court's one-word decision was both "illogical" and "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1262.

## C. This Court should reverse or, at the least, vacate and remand for reconsideration before a different district court judge

This Court should reverse and strike the computer monitoring condition. Alternatively, if the Court does not reverse outright, it should at least remand for reconsideration before a different district court judge.

1. As addressed above, the District Court abused its discretion in denying the stipulation to remove the electronic monitoring condition (Supplemental Condition 4). Mr. Mirando has been on supervision subject to this restrictive condition for many months now. To avoid further delay, and because there is no logical basis to keep the condition in place, this Court should reverse and order the condition stricken from Mr. Mirando's terms of supervised release. *See Sales*, 476 F.3d at 738 (vacating and remanding with instructions to modify overbroad electronic monitoring condition); *United States v. Lupold*, 806 F. App'x 522, 526 (9th Cir. 2020) (unpublished) (same).

33

2.     If the Court does not reverse outright, it should at least remand for reconsideration before a different district court judge. Vacatur and remand for reconsideration is often the remedy when a district court fails to explain or consider the relevant statutory factors in imposing a condition of supervised release. *See United States v. Collins*, 684 F.3d 873, 892 (9th Cir. 2012) (vacating residency restriction and remanding for further "analysis and support"); *United States v. Williams*, 356 F.3d 1045, 1052–53 (9th Cir. 2004) (remanding for reconsideration of mandatory medication condition "under the proper statutory standard and on an adequate record"); *United States v. Gross*, 307 F.3d 1043, 1044–45 (9th Cir. 2002) ("Accordingly, we will remand to enable the district court to consider the statutory factors before approving the stipulated modifications.").

If the Court follows this procedure—remanding for further proceedings, instead of reversing outright—it should order reassignment to a different judge on remand. Though uncommon, assignment to a different judge is appropriate in the "unusual circumstances" presented here. *United States v. Reyes*, 313 F.3d 1152, 1159 (9th Cir. 2002).

34

As addressed above, Mr. Mirando secured early release from prison by maintaining a perfect record and completing multiple, intensive rehabilitative programs.  But since his release, the District Court has repeatedly ignored or refused minor requests supported by the Probation Office—including requests aimed at decreasing the expenditure of taxpayer resources by the Probation Office.

First, the parties filed the stipulation at issue here—supported by the Probation Office—to strike the electronic monitoring condition.  The District Court did not rule on the stipulation for four months, and when it finally issued its ruling, it did so by stamping a single word on the papers filed by the parties:  "DENIED."  (ER-4.)

Then, while this appeal was pending, Mr. Mirando presented an unopposed motion for an indicative ruling to the District Court, which was also supported by the Probation Office.  The motion sought an indicative ruling that the Court would transfer jurisdiction over Mr. Mirando's supervision to the District of Oregon.  The motion was accompanied by a sworn declaration from Mr. Mirando's assigned Probation Officer in Oregon, Officer Omar Lara.  (ER-14.)  Officer Lara explained that because Mr. Mirando's supervision was transferred to

the District of Oregon, but jurisdiction remained in the United States District Court for the Central District of California, Mr. Mirando was being dually supervised by the Probation Offices in Oregon and in the Central District of California. (ER-10, 15.) Officer Lara attested that this dual supervision requires the expenditure of duplicative resources by the Probation Office. (ER-15.) Based on these circumstances, the Probation Office supported "permanently transferring jurisdiction over Mr. Mirando's supervision to the United States District Court for the District of Oregon." (ER-11, 17.) Mr. Mirando represented that to promote the efficient transfer of jurisdiction, he would dismiss this appeal with prejudice if jurisdiction over his supervision was transferred to the District of Oregon. (*See* ER-12.)

In short, the motion for an indicative ruling presented a practical solution to the challenges described by the Probation Office. That solution would result in saving resources for multiple government agencies, including by obviating the need for this appeal. But as of the filing of this brief, that unopposed motion has been pending for more than two months, with no action from the Court. (ER-13, 261.)

The record contains no explanation for the District Court's delays in resolving that unopposed motion for an indicative ruling. Nor does it contain any explanation for the four-months it took for the District Court to stamp the word "denied" on the stipulation the parties submitted to strike one condition from the terms of Mr. Mirando's supervision. Nor does the record contain any explanation for the District Court's decision to deny that stipulation.

Based on this unique backdrop, if the Court is going to remand for reconsideration, it should remand to a different district court judge. The following factors are relevant to the appropriateness of such relief: (1) whether it's reasonable to expect that the current judge will have "substantial difficulty" putting previously expressed, but erroneous, views or findings out of his mind; (2) whether reassignment will "preserve the appearance of justice;" and (3) whether any "waste and duplication" resulting from reassignment would be "out of proportion to any gain in preserving the appearance of fairness." *United States v. Wells*, 879 F.3d 900, 938 (9th Cir. 2018) (quotation marks omitted). The first two factors are equally important, and either of them suffices to support reassignment. *Id.*; *see also Evon v. Law Offices of Sidney*

*Mickell*, 688 F.3d 1015, 1034 (9th Cir. 2012).  Showing "actual bias" of the current judge is not necessary to justify reassignment.  *Wells*, 879 F.3d at 938.

Here, all three factors weigh in favor of reassignment.  First, the District Court's confounding and repeated delays, and the eventual decision denying relief without explanation, undermine "the appearance of justice."  *Wells*, 879 F.3d at 938.  If the Court remands for reconsideration without reassignment, then any relief for Mr. Mirando may be further delayed by many months.  Mr. Mirando has been serving his term of supervised release, subject to the electronic monitoring condition, since June 22, 2022.  (ER-6, 15.)  The Court should order reassignment to prevent further delays and preserve the appearance of justice.

Second, the District Court's repeated refusal to grant relief to Mr. Mirando that is supported by the Probation Office and either jointly requested by the Government (in the case of the stipulation to modify the conditions of supervision) or unopposed by it (in the case of the motion for an indicative ruling), make it reasonable to expect that the

38

current judge will have "substantial difficulty" putting previously expressed views or findings out of his mind. *Wells*, 879 F.3d at 938.

Finally, any "waste and duplication" resulting from reassignment, *id.*, would be minor given that the issue for remand is limited in scope to the modification of a single condition of supervision, which the Probation Office and the Government support.

## VIII. CONCLUSION

For the foregoing reasons, Mr. Mirando respectfully requests that the Court reverse the District Court's denial of the stipulation to modify his conditions of supervised release, or, alternatively, remand to a different district court judge for reconsideration.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 16, 2023     By  */s/ Joshua D. Weiss*
                                 JOSHUA D. WEISS
                                 Deputy Federal Public Defender
                                 Attorney for Defendant-Appellant

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**  | 23-338

The undersigned attorney or self-represented party states the following:

◉ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/ Joshua D. Weiss    **Date** | Oct 16, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17** *Rev. 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 23-338

I am the attorney or self-represented party.

**This brief contains** | 7,116 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Joshua D. Weiss     **Date** | Oct 16, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 08**     *Rev. 12/01/2018*